UTAH FARM PRODUCTION CREDIT
ASS'N, Plaintiff and Appellee,

v.

Garth N. LABRUM, Duane B. Labrum,
Ross N. Labrum, et al., Defendants
and Appellants.

No. 21044.

Supreme Court of Utah.

Aug. 18, 1988.
Rehearing Granted Sept. 9, 1988.

James R. Brown, Michael N. Zundel, Salt Lake City, for plaintiff and appellee.

Raymond N. Malouf, Logan, for defendants and appellants.

STEWART, Justice:

Raymond N. Malouf, counsel for defendants, appeals a trial court order finding him in contempt of court for unlawfully converting to his own use $21,260.12 in violation of the court's order directing him to hold and safely keep that money in his possession for the benefit of the trustee appointed in his clients' individual bankruptcy cases. The trial court ordered Malouf to pay the trustee of defendants' bankruptcy estates the amount of $21,260.12 plus interest; to pay a fine of $100 to the district court; to be confined to the county jail for thirty days, all but 120 hours of which were suspended pending Malouf's compliance with the order; and to pay attorney fees incurred by plaintiff in the contempt proceedings. We affirm.

## I. FACTS

Utah Farm Production Credit Association (PCA) commenced this action in August, 1982, to foreclose its trust deed against the Labrums' farm and enforce PCA's security interest in the Labrums' farming equipment, accounts receivable, general intangibles, and other personal property. As holders of a promissory note, a mortgage, and a security agreement encumbering virtually all the Labrums' personal property, PCA requested the court to enter a money judgment against the Labrums and to issue an order of sale under the mortgage.

Shortly after the commencement of PCA's action against the Labrums, the Labrums filed a petition in bankruptcy under Chapter 11 of the Bankruptcy Code. While in bankruptcy, the Labrums accumulated a large fund of money, consisting, for the most part, of proceeds from a federal milk diversion program in which the Labrums participated. The fund was held by their attorney, Raymond N. Malouf. Neither the Labrums nor Malouf disclosed the existence of this fund to the federal bankruptcy court or to the Labrum creditors.

In July, 1984, almost two years after filing its initial complaint, PCA obtained relief from the bankruptcy stay, and on August 21, 1984, the trial court granted summary judgment against the Labrums in favor of PCA. Approximately four weeks later, the court entered a money judgment pursuant to the summary judgment order. Upon entry of the money judgment, PCA requested that the clerk of the trial court issue writs of execution on the Labrums' real and personal property. PCA also obtained an order in supplemental proceedings for the purpose of satisfying the judgment.

On October 3, 1984, the trial court granted the Labrums an order staying all actions to execute on the judgment, including supplemental proceedings, garnishments, and attachments. On October 22, 1984, the court denied the Labrums' motion to reconsider the summary judgment, vacated the October 3, 1984 stay, and expressly authorized PCA to collect on the judgment against the Labrums. On November 19, 1984, all the real estate encumbered by PCA's mortgage was sold at a sheriff's execution sale.

Meanwhile, PCA and the bankruptcy court learned of the existence of the Labrums' milk proceeds fund, and the bankruptcy court dismissed the Chapter 11 proceedings.

On December 31, 1984, the trial court issued a writ of garnishment directed to Malouf as garnishee. The writ, served on Malouf on January 2, 1985, commanded Malouf not to pay any debt due or to become due to the Labrums and to retain possession and control of all personal property, effects, and choses in action belonging to the Labrums until further order of the court. The Labrums then filed a motion to strike the writ of garnishment.

On February 8, 1985, counsel for PCA and Malouf appeared before the trial court. Malouf informed the court that on February 5, 1985, each of the Labrums had filed individually for protection under Chapter 7 of the Bankruptcy Code and asserted that, as a result, all state court proceedings against the Labrums should be automatically stayed. The trial court nevertheless denied a motion to dissolve the writ of garnishment and ordered Malouf to answer the interrogatories accompanying the writ of garnishment. In light of the automatic bankruptcy stay, the court disallowed execution based on Malouf's answers at the conclusion of the February 8 hearing, but ordered Malouf to "hold and safely keep any and all property in his possession belonging to the Defendants herein for the benefit of the trustee appointed in the bankruptcy cases of said Defendants."

Thereafter, PCA drafted an order reflecting the trial court's ruling and mailed it to Malouf on February 22, 1985. He later claimed that he did not receive the draft order. On February 25, 1985, Malouf gave $1,500 of the money in his control to Duane Labrum and $300 to Ross Labrum. Malouf also paid himself $6,000 from the funds.

On March 4, 1985, the trial court signed the order drafted by PCA. Malouf claims he received the written order two days later. Upon receipt of the written order, Malouf objected to the form of the order and moved to amend it. The court denied the objection and motion on April 1, 1985. Five days later, Malouf answered the interrogatories accompanying the writ of garnishment. On April 3, 1985, Malouf disbursed another $1,500 to Duane Labrum. On April 16, 1985, Malouf took another

$3,000 for his law firm. On May 6, 1985, he gave $3,000 to Ross Labrum.

In the meantime, the bankruptcy court disqualified Malouf from representing the Labrums in their bankruptcy actions and ordered him to turn over to the trustee all milk diversion proceeds in his possession. On or about June 18, 1985, Malouf turned over $41,299.88 to the bankruptcy trustee but retained $5,360.12 for attorney fees.

Several months later, on October 21, 1985, PCA filed a motion for an order to show cause why Malouf should not be held in contempt for disbursing money from the Labrums' milk proceeds fund in contravention of the trial court's February 8 order. The bankruptcy trustee joined PCA's action. On November 25, 1985, the trial court held that the February 8 order constituted a complete freeze of the milk proceeds fund pending the bankruptcy court's disposition of the funds. The court held Malouf in contempt for willfully violating the garnishment order and the February 8 order, granted the trustee a money judgment of $21,260.12, and assessed Malouf $2,200 attorney fees in favor of PCA. The court also fined Malouf $100 and sentenced him to serve thirty days in jail, twenty-five days of which were suspended on the conditions that Malouf return to the trustee all sums which he still held for the Labrums and that he answer truthfully questions concerning his resources and ability to pay the judgments.

Of the many issues raised by Malouf on appeal, only one is dispositive—whether the trial court had jurisdiction to enter the February 8, 1985 order of which Malouf was found to be in contempt. We conclude that the trial court had jurisdiction to enter the order and therefore affirm the contempt order against Malouf.

## II. JURISDICTION

██ Malouf contends that because the Labrums filed for bankruptcy three days before the trial court entered its February 8, 1985 order, the trial court no longer had jurisdiction to enter that order. We disagree.

The federal bankruptcy courts do not possess exclusive jurisdiction over civil proceedings arising under or related to Title 11 of the United States Code. *See Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In fact, 28 U.S.C. § 1334(b) (Supp.1988) explicitly provides:

> Notwithstanding any act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original *but not exclusive* jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11.

(Emphasis added.) Accordingly, this Court has recognized that within the context of proceedings involving debtors, "[i]t is possible for the state and federal courts to have concurrent jurisdiction." *Rogers v. Rogers,* 671 P.2d 160, 164 (Utah 1983). The United States Court of Appeals for the Ninth Circuit has likewise held in *Commodity Futures Trading Comm'n v. Petro Mktg.,* 700 F.2d 1279, 1283 (9th Cir.1983), that a nonbankruptcy court had jurisdiction to order a law firm to return $60,000 in legal fees disbursed by a client in violation of a permanent injunction prohibiting any transfer of the client's assets, in spite of the fact that a petition in bankruptcy had been filed and was pending at the time of the order. The court reasoned that the order would in no way frustrate the jurisdiction of the bankruptcy court and would, in fact, aid the receiver in collecting and preserving property of the bankrupt's estate. *Id.* at 1282–83.

In this case, the trial court ordered Malouf to hold the funds until requested by the bankruptcy trustee. The trial court's order therefore did not frustrate the jurisdiction of the federal bankruptcy court, but assisted the trustee in collecting and preserving the property of the bankrupts' estate. Inasmuch as the trial court's order did not deprive the bankruptcy court of jurisdiction, the trial court's order was properly within its jurisdiction.

## III. EXEMPTION

■ Malouf asserts that he did not disobey the trial court's February 8 order by disbursing the funds in his possession because those funds were exempt from garnishment under the Utah Exemptions Act, Utah Code Ann. § 78–23–5(3), –6(3), –15 (1987), and the February 8 order, since it was an order denying Labrum's motion to strike the garnishment, applied only to nonexempt funds that were subject to garnishment. Malouf's reading of the February 8 order is disingenuous. The order specifically instructed Malouf to "hold and safely keep *any and all* property in his possession belonging to the Defendants herein for the benefit of the trustee appointed in the bankruptcy cases of said Defendants." (Emphasis added.) As the trial judge stated in finding Malouf in contempt:

> I interpret the original garnishment order to be capable of one interpretation and one interpretation only, and that was a total hold.... [I]t's totally unambiguous. It clearly is a complete hold, with the discretion to determine any garnishment exemption ... placed before the trustee in bankruptcy and the bankruptcy court.

The order was clear, lawful, and within the trial court's jurisdiction. Moreover, even if the funds were exempt, which appears doubtful on this record, Malouf lacked standing to assert that challenge as justification for disobeying a lawful order since the funds belonged to Labrum and not to Malouf.

## IV. STAY ORDER

■ Malouf contends that the February 8 order violated the automatic stay provision of 11 U.S.C. § 362. Section 362(a) of the Bankruptcy Code prohibits

> (1) [t]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the

commencement of the case under this title;

....

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title....

11 U.S.C. § 362(a)(1), (4), (5) (1979). This section automatically imposes a stay upon all proceedings against a debtor or against property of the debtor's estate.

The trial court's February 8 order did not violate this section. In fact, the trial court specifically stated that the filing of the bankruptcy petition stayed the garnishment action initiated by PCA. The court merely ordered Malouf to "hold and safely keep any and all property in his possession belonging to the Defendants herein *for the benefit of the trustee appointed in the bankruptcy cases* of said Defendants." (Emphasis added.) Therefore, the February 8 order was not an attempt to collect on the judgment owed to PCA by defendants, but merely a precaution to protect PCA's rights and prevent unlawful disbursement of the milk proceeds fund.

Thus, the February 8 order did not violate the basic purpose of the automatic stay, which is to protect the debtor from his creditors. *Rogers*, 671 P.2d at 164 (*citing In re Flagg*, 17 B.R. 677, 678 (Bankr.E. D.Pa.1982)). Nor did the court's order prejudice the debtor in any way. The order merely required that funds in a third party's possession be held by the third party and turned over to the trustee. This is what usually occurs once a petition in bankruptcy is filed.

Finally, the automatic stay imposed by 11 U.S.C. § 362 operates solely against the debtor and property of the debtor, and not against other parties and property. *In re Laird*, 6 B.R. 273, 275–76 (Bankr.E.D.Pa. 1980). The trial court's order was directed to Malouf and not to the Labrums. Likewise, because the order merely instructed Malouf to preserve the Labrums' property in his possession for the benefit of the

trustee, it did not determine any rights in the property held by Malouf for the Labrums and therefore was not directed against the property of the bankrupt parties. Because the trial court's order was against Malouf rather than the Labrums or their estate, the § 362 automatic stay had no effect on the February 8 order. *See Laird*, 6 B.R. at 275–76.

## V. CONTEMPT

Finally, we agree with the trial court that Malouf's refusal to obey the February 8 order constitutes contempt. Utah Code Ann. § 78–32–1 (1987) provides in pertinent part:

The following acts or omissions in respect to a court or proceedings therein are contempts of the authority of the court:

....

(5) Disobedience of any lawful judgment, order or process of the court.

Similarly, Utah Code Ann. § 78–7–5(4) (1987) provides that every court has power to compel obedience to its orders. *See e.g., Mellor v. Cook*, 597 P.2d 882 (Utah 1979); *Foreman v. Foreman*, 111 Utah 72, 176 P.2d 144 (1946). Utah Code Ann. § 78–32–10 authorizes the court both to fine and to imprison parties found in contempt. In addition to fines and imprisonment, the court may order the contemner to pay the aggrieved party his damages, costs, and expenses. Utah Code Ann. § 78–32–11 (1987).

▮ This Court's review of a contempt citation involves two questions: first, whether the underlying order is lawful; and second, whether the party's conduct in violating the order constitutes contempt of court. *Mellor*, 597 P.2d at 884. To be held in contempt, a party must have (1) known of the duty imposed by the court's order, (2) had the ability to comply with the order, and (3) willfully and knowingly refused to comply. *Coleman v. Coleman*, 664 P.2d 1155, 1156 (Utah 1983). As previously concluded, the orders of the trial court were lawful. The only remaining question, therefore, is whether Malouf knew of the

duty imposed by the court and knowingly refused to comply with that duty.

On appeal, Malouf has the burden of demonstrating that, viewed in the light most favorable to the trial court, the evidence at trial was insufficient to support the trial court's findings. *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985). Malouf has failed to show that he did not know of the duty imposed by the court and that he did not knowingly refuse to comply with that duty.

It is clear that Malouf was present at the hearing when the trial court verbally ordered him to retain possession of the funds and to turn them over to the trustee. Malouf also received a written copy of the order on March 6, 1985. After receiving both the verbal order and the written copy of that order, Malouf nevertheless continued to disburse funds to himself and his clients in direct violation of the order. Malouf's acts, coupled with his knowledge of the duty imposed upon him, clearly evince his knowing and willful refusal to comply with the trial court's order. Malouf was undoubtedly capable of full compliance with the order, yet he chose to violate the order in clear contempt of the trial court's authority. Under the circumstances, the sanctions imposed by the trial court were appropriate. Affirmed.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.