IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 27, 2021 Session

## SARA MARIE POE MOSSBECK v. JOHN POLLARD HOOVER, JR.

**Appeal from the Circuit Court for Hamilton County**
**No. 99D247  W. Jeffrey Hollingsworth, Judge**

_____

### No. E2020-00311-COA-R3-CV

_____

This case involves a post-divorce action, in which the father filed a petition for contempt against the mother, alleging that the mother failed to pay her portion of the child's medical expenses pursuant to the permanent parenting plan. The Trial Court denied the father's request that the mother be held in contempt but awarded the father a judgment for the mother's portion of the child's medical expenses. The Trial Court declined to award attorney's fees to the father and ordered that the mother be permitted to make installment payments to the father. We vacate the Trial Court's order permitting the installment payments as being premature. We further modify the judgment against Mother to $38,759.11 upon our determination that the amount paid by the father to Mountain Management and Denials Management was only $1,781.76. We affirm the Trial Court's judgment in all other aspects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated in Part, Modified in Part, Affirmed as Modified; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

John P. Konvalinka and Jillyn O'Shaughnessy, Chattanooga, Tennessee, for the appellant, John Pollard Hoover, Jr.

Harold L. North, Jr., and Nathan L. Kinard, Chattanooga, Tennessee, for the appellee, Sara Marie Poe Mossbeck.

# OPINION

## Background

Sara Marie Poe Mossbeck ("Mother") and John Pollard Hoover, Jr., ("Father") were married in October 1997 and divorced in June 2000. During the marriage, the parties had one child ("the Child"). At the time of the divorce, the Trial Court entered a final divorce decree adopting a permanent parenting plan that both Mother and Father signed as being proposed in good faith and in the Child's best interest. The permanent parenting plan stated that the parties would share parenting responsibilities for the Child but that Mother's residence was the Child's primary residence. The permanent parenting plan provided that Father would maintain medical insurance for the Child with a deductible not to exceed the current amount of $200. If the deductible increased beyond $200, Father was to be responsible for the excess deductible. Any uncovered medical expense, including any deductible up to $200, is to be divided equally by the parties. The permanent parenting plan states that Father will pay any increase in the amount of the co-pay or unreimbursed expenses as a result of changing health insurance carriers. Concerning health care decisions, the permanent parenting plan further stated as follows:

> 3.2 MAJOR DECISIONS. Major decisions regarding each child will be made as follows: The mother will send a written decision to the father on all major educational, health care and religious upbringing issues and the father will respond in writing within fifteen (15) days. Mother will consider objectively the father's input and respond within fifteen (15) days with her decision. Any dispute will be resolved by mediation with Mary Ann Zaha. In the event discord continues between the parties, either party may request family counseling to facilitate communication.

> 3.2.1 HEALTH CARE. The child(ren) will continue under the medical insurance plan of the Father. In the event there are medical expenses not covered by medical insurance, the parents will share those costs equally. Mother and Father will consult with respect to major, non-emergency medical decisions, and either Father or Mother will be entitled to seek a second opinion with respect to the necessity and wisdom of any medical decision. If a second opinion differs in any material respect with the first opinion, a third opinion will be obtained, and the majority opinions will control. The parties have agreed that either parent may make emergency decisions affecting the health and safety of the child(ren). To the extent that the following medical services are not covered by medical insurance, they are approved: eyeglasses or contact lenses, braces, routine annual physical (with the results available to both parents), and periodic dental cleaning with any cavities filled. Decisions not covered hereunder will be made as set forth above.

In April 2012, Father filed a "Verified Petition to Modify and for Emergency Change of Primary Residential Placement." As a result of this petition, Father was given temporary custody of the Child. According to Father, the Child "was getting out of control" and the Department of Children's Services was involved. Father subsequently consulted with an "education consultant," who provided recommendations of placement for the Child. At the recommendation of the consultant, Father subsequently placed the Child in residential programs, including Trails Carolina, Solstice East, and Northwest Passage, due to her behavioral and psychiatric issues. Significant expenses were incurred from these programs that were not covered by medical insurance. Mother signed the treatment consent form for the Trails Carolina program but did not sign the promise to pay for the treatment. Mother claims she informed Father at that time that she was unable to pay for the inpatient treatment programs and did not sign the payment agreements concerning the treatment. Mother testified at trial that Father had informed her that he would "take care of [the cost]." Father, however, did not recall discussing payment to the facility with Mother before the Child went to the facility.

Father filed a petition for contempt against Mother in April 2016 due to Mother's failure to pay her portion of the Child's uncovered medical expenses. In his petition, Father requested that Mother be held in contempt and that Mother be required to pay half the Child's uncovered medical expenses and Father's attorney's fees incurred as a result of the contempt action.

The Trial Court conducted a trial concerning Father's contempt motion over three nonconsecutive days from December 2016 through June 2019, in which three witnesses testified: (1) Father; (2) Matthew Stelzman, an accountant; and (3) Mother. The record also included portions of deposition testimony of Mother, Father, and Rhonda Arnold, Father's sister. On the first day of trial, the Trial Court heard evidence submitted by Father. Father testified and admitted as one of his exhibits a collective exhibit of medical expenses incurred on behalf of the Child.

The Trial Court ended the first day of trial upon its determination that this was more an accounting issue rather than a legal issue. For this reason, the Trial Court referred the case to an accountant to serve as special master in order to sort through the payment and invoice records concerning the medical expenses. The Trial Court memorialized its decision in a written order in which it stated that the matter would reconvene after the accountant had completed his or her analysis of the information. The Trial Court ordered the parties to designate an accountant to review all documentation and make a determination on four specific issues. The Trial Court further ordered Mother to deposit with the clerk of the court the proceeds for medical expenses for the Child she had received from her insurance company.

An accountant, Matthew Stelzman, was engaged to develop an independent analysis and opinion concerning the medical expenses related to the Child. Mr. Stelzman was requested to determine (1) the total amount of medical expenses incurred for the Child; (2) which charges were submitted to the Child's health insurance providers for payment; (3) what charges were paid by each of the health insurance providers and by Father; and (4) if a submitted expense was not paid by the health insurance provider, the reasoning provided for such nonpayment, including whether the expenses were subject to a deductible or co-pay, were out-of-network, or lacked a pre-authorization. Mr. Stelzman submitted a report to the Trial Court providing his opinion on these matters and testified at trial.

Following the conclusion of the trial in this matter, the Trial Court entered an order in August 2019[1] finding as follows in relevant part:

> For the reasons set forth below, the Court holds that the Mother is not in willful contempt of this Court's order. However, under the provisions of the Permanent Parenting Plan, the Mother does owe the Father $37,206.34 for reimbursement of medical bills he paid which were not covered by medical insurance.
>
> These parties were divorced June 14, 2000. An Agreed Parenting Plan stated the Father would provide medical insurance for the parties' daughter. Section 1.4 of the Plan also provides that any medical expenses not covered by insurance would be divided equally by the parties. The lone exception to that provision was that the Father would be solely responsible for any annual deductibles exceeding $200.00.
>
> The parties' daughter suffered significant emotional and psychological problems. Custody was given to the Father. Counseling was ordered. Eventually, the Father determined that the daughter needed to participate in some residential treatment programs. The three (3) main programs were Northwest Passage, Solstice East and Trails Carolina. Those programs alone accounted for $161,335.00. The Father wrote checks or submitted his credit card to pay most of these costs. He seeks reimbursement from the Mother for 50% of these and other medical expenses.
>
> **Contempt**
>
> The Court finds that Sara Marie Mossbeck, the Mother, is not in willful contempt of this Court's order. First, although the Mother knew of the daughter's enrollment in the residential programs, she expressly told the Father she could not afford to pay for them. In addition, the Father admitted

---

[1] The Trial Court initially entered an order in April 2018 but later vacated its judgment as being premature.

- 4 -

that he did not submit the bills to the Mother because he was trying to get the insurance company to pay. Finally, it is undisputed that when the bills were submitted to the Mother, she submitted them to Blue Cross, her insurer, and recovered $40,281.05, which has been on deposit with the Clerk for over two (2) years. The Mother did not have the capacity to pay and she did what she could to recover money spent for the daughter's care. Therefore, her failure to pay 50% of the medical expenses was not willful and she cannot be held in contempt.

**Reimbursement**

Although the Mother is not held in contempt she still has an obligation to pay under the Parenting Plan. As noted in the Court's previous order, which has been set aside, Mathew Stelzman, a CPA, was hired to analyze the records and determine the total amount paid, the amount paid by insurance and the amount attributable to deductibles for which the Father is responsible. Mr. Stelzman submitted a report and testified at trial. The Court found Mr. Stelzman to be a credible witness.

Mr. Stelzman determined that the Father spent $179,295.62 on medical expenses for the daughter. As noted previously, the Parenting Plan requires that the parties pay 50% each of all annual deductibles up to $200.00. Anything over $200.00 per year is the sole responsibility to the Father. Mr. Stelzman's report stated that the total amount of deductibles exceeding $200.00 per year for 2014-2017 was $13,038.04. That is the Father's responsibility and will be subtracted from the $179,295.62 he spent. The remainder is $165.857.62.

A previous order of the Court stated that the counseling fees for Dr. Beth Cappecci would be prorated 75% to the Father and 25% to the Mother. The Father paid the entire bill. His portion of Dr. Cappecci's bill is $3,046.50. That amount is deducted from any reimbursement by the Mother. The amount is now $162,811.12. The Mother's portion, which she did not pay, is $1,015.50. That is added back and the sum is $163,826.62.

At the hearings on this matter, the Mother argues that expenses the Father paid to companies he hired to fight with the insurance companies are not medical expenses and, therefore, are not subject to reimbursement. She is correct. Mr. Stelzman's report shows $133.68 paid to Mountain Management; However, evidence was produced that the Father spent a total of $8,167.06 for Mountain Management and Denials, Inc. That amount is deducted from the amount subject to reimbursement. The remainder is now $155,659.56.

- 5 -

The Mother argues that there were "double payments," i.e. duplicate payments to medical providers by the Father and the insurance companies. The Court has reviewed the exhibits and the Stelzman report and does not find support for that argument.

The amount of uncovered medical bills, as set forth above, is $155,659.56. One-half of that is $77,829.78. As noted previously, $40,623.44, which was recovered by the efforts of the Mother, is on deposit with the Clerk. If that sum is released to the Father, the remainder of the Mother's liability is $37,206.34.

The Mother argues that she is not able to make those payments. That is why she refused to sign the payment agreements for the residential programs. While the Mother may be correct about her ability to pay, that does not affect the fact that the Permanent Parenting Plan requires that she pay 50% of all uncovered medical expenses. That provision of the Parenting Plan, to which she agreed, has not changed. She owes the Father $37,206.34.

Also, it has come to the Court's attention that Mathew Stelzman has not been paid for the work he did in this case. His bill is $29,500.00, which appears to be reasonable. For the reasons set forth below, the Father, John P. Hoover, is Ordered to pay that bill.

The reason Mr. Stelzman had to be hired was that it would have been impossible for the Court to make any sense out of the evidence produced. While it is understandable that the Father felt rushed to get services for his daughter, he admits he acted, to a great extent on his own. Some bills may have been submitted to insurance, some not submitted. It appears from the Stelzman report that some bills were refused by the insurance company because of lack of authorization. The Father did not submit the issue to the insurance company before agreeing to pay for the services rendered. The tangled situation Mr. Stelzman had to straighten out was created by the Father.

(Internal citations omitted.)

In September 2019, Mother filed a motion to alter or amend arguing that the Trial Court erred by determining that Mother was responsible for a portion of the medical expenses despite her inability to pay. She further averred that the inpatient treatment was not emergent care and she should not be responsible for the medical bills that were denied because Father did not get pre-authorization for them. Additionally, Mother argued that she should not be required to pay the medical charges that were not paid by insurance

because they were deemed to be not medically necessary and Father had done "little or nothing to contest that determination." Mother further argued that Father should be responsible for the amount of medical expenses that were unreimbursed out-of-network charges and that Father had failed to account for reimbursements he had received from the insurance provider. According to Mother, she had repeatedly indicated to Father that she was unable to afford the charges and requested the Trial Court set aside its judgment against her "to eliminate any liability" she owes to Father.

Father subsequently filed a motion to alter or amend, requesting the Trial Court to relieve Father of the requirement to pay Mr. Stelzman's fee arguing that Mother had requested his services and his report "essentially confirmed the figures that [Father] provided to the Court." Father further asked the Trial Court to deduct the funds Mother received from her insurance company from the total amount of medical expenses instead of from Mother's portion of the expenses. Father additionally requested an award of his attorney's fees.

In January 2020, the Trial Court entered an order concerning the parties' motions to alter or amend and ruled as follows in pertinent part:

**Father's Motion**

The Father's motion argues that the money the Mother received from Blue Cross should have been deducted from the total medical expenses paid and not from the Mother's share of those expenses. That is correct. In its original Order, the Court determined that, after certain adjustments, the total amount of medical bills paid was $155,659.56. The Court then divided that in half, which equals $77,829.78. The $40,623.44 the Mother recovered from Blue Cross was deducted from that sum, which left the judgment amount of $37,206.34.

The Parenting Plan entered in 2000 says that any medical expense not covered by insurance would be divided equally. The money the Mother recovered on her Blue Cross policy is obviously for expenses covered by insurance. Therefore, it should have been deducted from the total amount spent to determine the amount that is not covered.

Therefore, the Order of August 13, 2019, is amended to read as follows:

"The Father spent $179,295.62 on medical expenses for the daughter. The $13,038.04 of deductibles for which the Father is responsible is deducted, leaving a sum of $165,857.62.

The Father paid the entire bill to Beth Cappecci. The Mother's share, which she did not pay, was $1,015.50. That is added back to the sum, leaving a total of $166,872.50.

The Father spent $8,167.00 on a company known as Mountain Denials, which was to contest the denial of payment by the Father's insurance company. Those bills were not medical expenses and are not reimbursable. That sum of $8,167.00 is deducted, leaving a total of $158,705.50.

The Mother recovered $40,623.44 on her Blue Cross policy. Those are obviously covered medical expenses. On December 19, 2019, a check for $41,222.52 was issued to the father by the clerk. Deducting that from the total of $158,705.50 leaves a total of $117,482.98. One half of that amount is $58,741.49.

In his motion, the Father also asks that he be relieved of the obligation to pay the entire bill of Mathew Stelzman, a CPA brought into the case to examine these issues. For the reasons set forth below, that part of his motion is Denied. Based upon the evidence produced at trial, it was clear that the Father was the primary residential parent and that the daughter was suffering from psychological and emotional issues. The Father justifiably sought professional help in dealing with the daughter's issues. However, at least from a financial standpoint, the Father's approach to obtaining that help can politely be described as haphazard. He contacted medical providers, including in house therapy providers such as Trails Carolina and Solstice East. When he filed this action to recover some of the expenses not covered by insurance, he did not know how much he had spent. It turned out that he sent the daughter to the inpatient facilities without even checking with the insurance companies as to whether they would pay. He just assumed it would be covered. The Father's sister tried to help and was able to put together some figures to be submitted. However, there was a great deal the sister could not do. It was necessary to have an expert untangle and explain the mess the Father had created. It was his fault that the records necessitated an expert. Therefore, he should pay the fees generated by the expert. Mr. Stelzman's report is referenced later.

**The Mother's Motion**

The amount of $58,741.49 would appear to be the one half of uncovered medical expenses the Mother owes the Father. However, she has also filed a Motion to Alter and Amend raising several arguments.

The Mother's motion raises questions that are more difficult to answer. In effect, she argues that the Father created the mess and that his actions resulted in unnecessary and avoidable uncovered medical costs. In addition she argues that she cannot afford to pay one half of the bills. In effect, the Mother argued that the Father did not act in good faith in incurring these costs.

The Court asked counsel to submit briefs on two (2) issues. The first was whether the doctrine of good faith and fair dealing applied to this case. If so, the Court asked how the application of that doctrine affected the outcome. Counsel submitted the requested briefs. The Father . . . correctly argued that this is not a contract action. As such, the doctrine of good faith and fair dealing does not apply. The law is clear that when parties submit an agreed parenting plan, as happened in this case, the court should treat most terms in the parenting plan as a contract. However, issues of child support lose their contractual nature when the court adopts the parenting plan and incorporates it into its Final Decree. That is because child support, unlike a contract provision, can be changed by the court if there is a change in circumstances. The Child Support Guidelines require the court to make provision for uncovered medical costs. Therefore, it is part of child support.

By way of example, a party who willfully fails to pay uncovered medicals can be held in contempt of court and punished, including incarceration. It is difficult to conceive of a party going to jail for breach of contract.

So, it is clear to this Court that this is not a contract action. However, the question of whether the Father must act in good faith remains. Just because he has a court order, the Father cannot go out and incur whatever costs he wants and expect the Mother to be forced to pay half of those costs.

The Parenting Plan in this case provides a mechanism to resolve dispute as to medical treatment for the daughter. Paragraph 3.2.1 of the Plan says:

> "Mother and Father will consult with respect to major, non-emergency medical decisions, and either Father or Mother will be entitled to seek a second opinion with respect to the necessity or wisdom of any medical decision."

The Father admitted that sending the daughter to Trails Carolina and Solstice East were not emergencies. There was time before the daughter entered those programs for the Father to check with the insurance companies and get pre-

approval. There was also time for the mother to request a second opinion. She did not do so. In fact, the evidence was that the Mother agreed it was beneficial for the daughter to go. She signed consent of treatment forms. What the Mother refused to sign was a promise to pay for that treatment. She argued then and argues now that she simply could not afford the cost of the programs.

The Stelzman report states on page 4 that a total of $161,335.00 was spent on Trails Carolina, Solstice East and Northwest Passage. Of that amount, it appears from the Stelzman report that $46,350.00 of that amount was refused because the Father did not seek authorization before sending the daughter to the facilities. Those uncovered costs could have been avoided. One half of that amount, or $23,175.00 will be deducted from the total owed by the Mother. The total is now $35,566.49.

A significant portion of the charges, $99,239.00, were declined by the insurance companies because they were deemed "not medically necessary." That is something the Mother could possibly have avoided. As noted previously, the Parenting Plan allowed her to get a second opinion to determine whether the treatment sought was medically necessary. She declined to pursue a second opinion. None of those costs will be deducted.

Father timely appealed to this Court.

## **Discussion**

Although not stated exactly as such, Father raises the following issues for our review on appeal: (1) whether the Trial Court erred by declining to find Mother's actions contemptuous upon its finding that Mother's violation was not willful; (2) whether the Trial Court erred by declining to award Father his attorney's fees related to the petition for contempt; (3) whether Father is entitled to an award of attorney's fees on appeal; (4) whether the Trial Court erred by ordering Father to pay the entire cost of the accountant appointed by the Trial Court; (5) whether the Trial Court erred by ordering Mother to make installment payments to Father without post-judgment interest, pursuant to Tennessee Code Annotated § 47-14-122; (6) whether the Trial Court erred by deducting $46,350 from the total amount of medical expenses due to Father's failure to obtain pre-authorization; (7) whether the Trial Court erred by deducting $8,167.06[2] that Father related to "Denials and Mountain Management" when Father and the accountant agreed that Father asked for only $1,781.76 for purposes of reimbursement by Mother.

---

[2] Although Father argues in his appellate brief that the Trial Court deducted $8,176.06, we note that the Trial Court deducted $8,167.06 for Denials Management and Mountain Management.

Mother raises the following additional issues for our review: (1) whether the Trial Court erred by finding Mother responsible for expenses that were unilaterally incurred by Father; (2) whether the Trial Court erred by crediting the insurance benefit received by Mother to the total medical expenses, instead of applying it to Mother's obligation; and (3) whether Mother is entitled to an award of attorney's fees incurred on appeal.

With regard to civil contempt, our Supreme Court has instructed:

> Civil contempt claims based upon an alleged disobedience of a court order have four essential elements. First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

> * * *

> The fourth issue focuses on the willfulness of the person alleged to have violated the order. The word "willfully" has been characterized as a word of many meanings whose construction depends on the context in which it appears. *Spies v. United States,* 317 U.S. 492, 497, 63 S.Ct. 364, 87 L.Ed. 418 (1943); *United States v. Phillips,* 19 F.3d 1565, 1576-77 (11th Cir. 1994). Most obviously, it differentiates between deliberate and unintended conduct. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust,* 209 S.W.3d [602,] 612 [(Tenn. Ct. App. 2006)]. However, in criminal law, "willfully" connotes a culpable state of mind. In the criminal context, a willful act is one undertaken for a bad purpose. *Bryan v. United States,* 524 U.S. 184, 191, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998); *State v. Braden,* 867 S.W.2d 750, 761 (Tenn. Crim. App. 1993) (upholding an instruction stating that "[a]n act is done willfully if done voluntarily and intentionally and with the specific intent to do something the law forbids").

> In the context of a civil contempt proceeding under Tenn. Code Ann. § 29-2-102(3), acting willfully does not require the same standard of culpability that is required in the criminal context. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust,* 209 S.W.3d at 612. Rather, willful conduct

>> consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is 'willful' if it is the product of free will rather than coercion. Thus, a person acts 'willfully' if he or she is a free agent, knows

- 11 -

what he or she is doing, and intends to do what he or she is doing.

*State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust,* 209 S.W.3d at 612 (citations omitted). Thus, acting contrary to a known duty may constitute willfulness for the purpose of a civil contempt proceeding. *United States v. Ray,* 683 F.2d 1116, 1127 (7th Cir. 1982); *City of Dubuque v. Iowa Dist. Ct. for Dubuque County,* 725 N.W.2d 449, 452 (Iowa 2006); *Utah Farm Prod. Credit Ass'n v. Labrum,* 762 P.2d 1070, 1074 (Utah 1988). Determining whether the violation of a court order was willful is a factual issue that is uniquely within the province of the finder-of-fact who will be able to view the witnesses and assess their credibility. Thus, findings regarding "willfulness" should be reviewed in accordance with the Tenn. R. App. P. 13(d) standards.

After determining that a person has willfully violated a lawful and sufficiently clear and precise order, the court may, in its discretion, decide to hold the person in civil contempt. *See Robinson v. Air Draulics Eng'g Co.,* 214 Tenn. 30, 37, 377 S.W.2d 908, 912 (1964). The court's decision is entitled to great weight. *Hooks v. Hooks,* 8 Tenn.Civ.App. (Higgins) 507, 508 (1918), *Hooks v. Hooks,* 8 Tenn.Civ.App. (Higgins) 507, 508 (1918). Accordingly, decisions to hold a person in civil contempt are reviewed using the abuse of discretion standard of review. *Hawk v. Hawk,* 855 S.W.2d 573, 583 (Tenn. 1993); *Moody v. Hutchison,* 159 S.W.3d 15, 25-26 (Tenn. Ct. App. 2004). This review-constraining standard does not permit reviewing courts to substitute their own judgment for that of the court whose decision is being reviewed. *Williams v. Baptist Mem'l Hosp.,* 193 S.W.3d 545, 551 (Tenn. 2006); *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001).

An abuse of discretion occurs when a court strays beyond the framework of the applicable legal standards or when it fails to properly consider the factors customarily used to guide that discretionary decision. *State v. Lewis,* 235 S.W.3d 136, 141 (Tenn. 2007). Discretionary decisions must take the applicable law and relevant facts into account. *Ballard v. Herzke,* 924 S.W.2d 652, 661 (Tenn. 1996). Thus, reviewing courts will set aside a discretionary decision only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Mercer v. Vanderbilt Univ.,* 134 S.W.3d 121, 131 (Tenn. 2004); *Perry v. Perry,* 114 S.W.3d 465, 467 (Tenn. 2003).

*Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 354-58 (Tenn. 2008) (internal footnotes omitted).

We first address Father's issue concerning contempt. According to Father, the Trial Court erred by declining to find that Mother was in contempt of court. The Trial Court's decision was based on its finding that Mother's failure to pay half the uncovered medical expenses for the Child was not willful due to her inability to pay. Concerning willfulness, this Court has stated:

> "A finding of willful conduct must precede a judgment for contempt." *Reeder v. Reeder*, 375 S.W.3d 268, 280 (Tenn. Ct. App. 2012), *perm. app. denied* (Tenn. June 20, 2012) (quoting *Haynes v. Haynes*, 904 S.W.2d 118, 120 (Tenn. Ct. App. 1995)); *see also Konvalinka*, 249 S.W.3d at 357-58. In the context of a civil contempt finding for violation of a child support order, this Court has explained that in addition to a finding of willful conduct:
>
>> Additionally, to hold a party in contempt for failure to pay child support, the court must also determine that the obligor had the ability to pay at the time the support was due. [*Ahern v.*] *Ahern*, 15 S.W.3d [73,] 79 [(Tenn. 2000)]. Although the party to be held in civil contempt must have the ability to perform the act it is ordered to perform, *Leonard v. Leonard*, [207 Tenn. 609] 341 S.W.2d 740, 743 (Tenn. 1971), the burden of proof is on the contemnor to show the inability to pay. *Pirrie v. Pirrie*, 831 S.W.2d 296, 298 (Tenn. Ct. App. 1992); *Leonard*, 341 S.W.2d at 743-44; *Gossett v. Gossett*, [34 Tenn.App. 654] 241 S.W.2d 934, 936 (Tenn. Ct. App. 1951).
>>
>>> The ability to pay means precisely what it seems to mean. The individual must have the income or financial resources to pay the obligation at the time it is due. Spending money on other bills or obligations does not absolve the failure to pay court-ordered child support. In fact, having the means to meet other financial obligations evidences an ability to pay child support.
>>
>> *Buttrey v. Buttrey*, No. M2007-00772-COA-R3-CV, 2008 WL 45525, at *2 (Tenn. Ct. App. Jan. 2, 2008).
>
> *Cisneros v. Cisneros*, No. M2013-00213-COA-R3-CV, 2015 WL 7720274, at *10 (Tenn. Ct. App. Nov. 25, 2015). Moreover, "[h]olding an individual in contempt is an available remedy 'only when the individual has the ability to comply with the order at the time of the contempt hearing.'" *Moore v.*

*Moore*, No. M2004-00394-COA-R3-CV, 2007 WL 2456694, at *3 (Tenn. Ct. App. Aug. 29, 2007) (quoting *Ahern*, 15 S.W.3d at 79).

*State ex rel. Groesse v. Sumner*, 582 S.W.3d 241, 262-63 (Tenn. Ct. App. 2019), *perm. app. denied* (Tenn. June 20, 2019).

In this case, the Trial Court found that Mother's failure to pay one-half of the medical expenses was not willful because she did not have the ability to pay one-half of the uncovered medical expenses. As instructed by our Supreme Court, we review findings concerning willfulness pursuant to Tennessee Rule of Appellate Procedure 13(d), which states that our "review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise."

According to Father, there was no evidence in the record that Mother did not have the capacity to pay her share of the uncovered medical expenses. However, Mother testified that during 2014 and 2015 when the medical expenses were incurred, Mother was not employed and only received approximately $26,000 a year from rental income. The Trial Court found that Mother had informed Father that she could not afford to pay for the inpatient treatment. The Trial Court found that Father had not initially provided the medical bills to Mother but that he did eventually provide her with copies of the bills. Additionally, the Trial Court found that Mother had been able to recover over $40,000 in proceeds for the Child's benefit from her insurance provider. Mother testified during trial that she had to file a grievance with the insurance company in order to obtain the proceeds. The Trial Court essentially found that Mother had done what she could to obtain this money for the Child's care. Father argues on appeal that the evidence presented contradicts the Trial Court's finding regarding the insurance proceeds because Mother kept the insurance proceeds without providing them to Father to reimburse him for the medical expenses. While we acknowledge our concern that Mother had not provided these proceeds to pay for the Child's medical expenses, these insurance proceeds were not enough to satisfy Mother's portion of the medical expenses even if she had immediately given them to Father. With the Trial Court's findings that Mother "did not have the capacity to pay and she did what she could to recover money spent for the daughter's care," the Trial Court denied Father's petition for contempt. The evidence presented does not preponderate against the Trial Court's finding that Mother's failure to comply with the permanent parenting plan was not willful. Therefore, we find and hold that the Trial Court did not err by declining to find that Mother was in contempt of court.

We next address whether the Trial Court erred by ordering Father to be responsible for the entire expense of the court-appointed accountant that had reviewed the records and reported his findings to the Trial Court. The accountant's fee totaled $29,500, which the Trial Court found to be reasonable. As part of his argument, Father contends that Mr. Stelzman was not properly appointed as either a special master, pursuant to Tennessee Rule

of Civil Procedure 53, or an expert witness, pursuant to Tennessee Rule of Evidence 706. Following the first day of trial, the Trial Court found that it was necessary to obtain an expert to assist the court with the accounting matters at issue. Tennessee Rule of Evidence 706 provides a trial court with the authority to appoint an expert in a bench trial upon the trial court's own motion and order allowing the parties to show cause why such expert should not be appointed. Rule 706(a) requires that the expert witness be notified in writing of his or her duties in being appointed as an expert witness, which the Trial Court did in its order appointing the accountant, and that the parties be permitted to cross-examine the witness, which both parties were permitted to do on the second day of trial.

We note that Father failed to object to the appointment of Mr. Stelzman during the Trial Court proceedings. Father argues that the Trial Court "did not make a motion to appoint an expert and did not give Father the opportunity to object." We disagree that Father was not provided with an opportunity to object. Although it appears that the Trial Court spoke to the attorneys concerning the appointment off the record, the Trial Court subsequently announced its decision to appoint an accountant in court on the same day without an objection from Father. The Trial Court subsequently filed its order memorializing its appointment of an accountant in this matter and specifying the specific issues the accountant should address. Father did not file anything in response to the Trial Court's oral ruling or its written order that would reflect any objection by Father to the appointment of an accountant. Father was given ample opportunity to object to the appointment of an accountant, provided with notice of the specific issues the Trial Court had appointed the expert to address, and allowed the opportunity to question Mr. Stelzman regarding his report during trial. Additionally, Father does not provide any authority in his principal brief to support his argument that he should be relieved of the financial responsibility of the expert's fee due to an alleged error by the Trial Court in its procedure of appointing Mr. Stelzman when no objection to the appointment was made. We find no merit to Father's argument in this regard.

Father further argues that even if the accountant was properly appointed, the Trial Court erred in taxing all costs of the expert witness to Father. The Trial Court found that the accountant was necessary in order for the Court to interpret the information provided by Father and that Mr. Stelzman's requested fee was reasonable. The Trial Court found as follows concerning this issue:

> Based upon the evidence produced at trial, it was clear that the Father was the primary residential parent and that the daughter was suffering from psychological and emotional issues. The Father justifiably sought professional help in dealing with the daughter's issues. However, at least from a financial standpoint, the Father's approach to obtaining that help can politely be described as haphazard. He contacted medical providers, including in house therapy providers such as Trails Carolina and Solstice East. When he filed this action to recover some of the expenses not covered

- 15 -

by insurance, he did not know how much he had spent. It turned out that he sent the daughter to the inpatient facilities without even checking with the insurance companies as to whether they would pay. He just assumed it would be covered. The Father's sister tried to help and was able to put together some figures to be submitted. However, there was a great deal the sister could not do. It was necessary to have an expert untangle and explain the mess the Father had created. It was his fault that the records necessitated an expert. Therefore, he should pay the fees generated by the expert.

Father also argues on appeal that he should not have to pay for the accountant because the accountant was not necessary. However, we note that the decision whether or not to appoint an expert witness or a special master is "within the discretion of the trial court." *Blackwood v. Martin*, No. W2000-01573-COA-R3-CV, 2002 WL 1751238, at *2 (Tenn. Ct. App. Jan. 16, 2002). Considering the amount of records and medical bills before the Trial Court, we do not find that the Trial Court abused its discretion in appointing Mr. Stelzman to review the information before the Trial Court. Tennessee Rule of Evidence 706(b) states that "the compensation shall be paid by the parties in such proportion and at such time as the court directs and thereafter charged in like manner as other costs." We find no abuse in the Trial Court's discretion in requiring Father to pay for the entire fee of Mr. Stelzman upon its finding that Father's actions had necessitated the expert.

We next address whether the Trial Court erred by finding that Father was responsible for $46,350 of the amount of total medical bills because he had failed to seek authorization from the insurance company prior to treatment, which caused the insurance company to deny the claims. The Trial Court found that these uncovered medical expenses could have been avoided by Father. According to Father, the Trial Court erred by deducting these uncovered medical expenses from the total amount of medical bills. We disagree. Father acknowledged during trial that he had not obtained preapproval for many of the medical services. The Trial Court found in its order that Father had acknowledged the inpatient treatment was not emergent and that he could have attempted to obtain approval from the health insurance provider prior to treatment. Upon the Trial Court's finding that these uncovered expenses could have been avoided by Father, the Trial Court deducted one-half of this amount from Mother's financial obligation, leaving financial responsibility for those expenses with Father. We do not find that the Trial Court erred in this regard and, therefore, affirm its finding that one-half of these uncovered medical expenses be deducted from the amount Mother was required to pay toward the medical expenses.

Father, however, also argues on appeal that if this Court determines that the Trial Court did not err by deducting the amount of medical expenses that he could have avoided, then the amount of the deduction by the Trial Court was incorrect. According to Father, he only paid $29,685, not the $46,350 that was billed by Trails Carolina and that only the $29,685 should be deducted from the amount of medical expenses as that was the amount

he was asking for as to reimbursement. The Trial Court relied on Mr. Stelzman's figure of a total of $179,295.62 of total medical expenses paid by Father, which included a total of $58,860 paid to Trails Carolina.

We agree with Father that only the amount he actually paid and is included in the amount he seeks reimbursement for should be deducted from the amount of medical expenses owed. However, Father's figure of $29,685 appears to include only payments made for services rendered from December 18, 2014 through February 12, 2015. Mr. Stelzman's report included $46,350 to Trails Carolina that had been denied by insurance due to Father's failure to obtain pre-authorization for services that had been rendered from November 1, 2014 through November 16, 2014 and from December 1, 2014 through February 11, 2015. The Trial Court found Father to be responsible for this amount. Father's figure of $29,685 appears to be leaving out expenses accrued from services rendered by Trails Carolina from November 1, 2014 until December 17, 2014 that are included on Mr. Stelzman's report. The evidence presented, including Mr. Stelzman's report and exhibits, does not preponderate against the Trial Court's finding that the $46,350 was included in the amount Father paid toward the Child's medical expenses and for which he is requesting reimbursement. We find this issue not well taken and affirm the Trial Court in this regard.

We next address Father's argument concerning the amount the Trial Court deducted from the total amount of medical expenses upon its finding that the expenses for Denials Management and Mountain Management were not medical expenses. In its order, the Trial Court found that evidence had been presented demonstrating that $8,167.06 in expenses accrued from these companies. However, Father argues that only $1,781.76 should have been deducted as that is all he is asking for to be reimbursed. It is unclear how the Trial Court calculated the figure of $8,167.06. According to Mother, that figure is close to the total amount of bills from not only Denials Management and Mountain Management, but also charges from an educational consultant and expenses for the Child's travel that Mother had previously argued were not medical. According to Mother, these amounts totaled $8,161.06 and the Trial Court made a "slight calculation mistake" but that it intended to exclude these amounts as being non-medical expenses. However, the Trial Court did not include those additional expenses in its order as being excluded, leaving only the expenses related to "Mountain Management and Denials, Inc," the companies which Father had hired to "fight with the insurance companies." We find that the amount related to payments made to Mountain Management and Denials Management was only $1,781.76 in Mr. Stelzman's report, and the Trial Court's deduction from the total medical expenses should be modified to reflect only a deduction for these expenses. When reducing the amount of medical expenses by $1,781.76 instead of $8,167.06, the Trial Court's judgment against Mother would increase to $38,759.11. We therefore, modify the Trial Court's judgment to reflect a monetary judgment against Mother of $38,759.11 owed to Father for her portion of the Child's medical expenses.

We next address whether the Trial Court erred by ordering that Mother could make installment payments to Father. In its January 2020 order, the Trial Court found that Mother owed Father $35,566.49 in unpaid uncovered medical expenses, which she should pay to Father "at the rate of $100.00 per month." Tennessee Code Annotated § 26-2-216 (2017) provides as follows in pertinent part:

> (a)(1) **After any judgment has been rendered in any court and the time to appeal therefrom has elapsed without such an appeal having been made**, the judge of the court which rendered the judgment may, either before or after the issuance and service of garnishment, upon written consent of the parties or upon written motion of the judgment debtor, after due notice and after full hearing of such motion, enter an order requiring such judgment debtor to pay to the clerk of the court a certain sum of money weekly, biweekly or monthly to apply upon such judgment. The filing of such motion by the debtor shall stay the issuance, execution or return of any writ of garnishment against wages or salary due the judgment debtor or any other funds belonging to the judgment debtor sought to be substituted to the satisfaction or payment of or upon such judgment during the period that such judgment debtor complies with the order of the court. Such motion of the judgment debtor shall be supported by an affidavit stating the debtor's inability to pay such debt with funds other than those earned by the debtor as wages or salary, or received from other sources in such amounts as to necessitate or make equitable installment payments, the name and address of the debtor's employer, or other source of funds and amount of such wages or salary, and the date of payment thereof.

> (2) Notwithstanding subdivision (a)(1), **upon written consent of the parties**, the hearing of the judgment debtor's motion to pay the judgment in installments may be held on the same date that such judgment is entered.

(Emphasis added.)

In this case, when the Trial Court ordered the installment payments, the judgment had not become final with the appeal period elapsing without an appeal being initiated and no motion or affidavit had been filed requesting such installment payments by Mother. Although subsection (2) allows a hearing to be held on a motion to allow installment payments on the same date the judgment is entered, there was no such written consent of the parties. The Trial Court's order allowing Mother to make installment payments toward the judgment was premature. We, therefore, vacate the Trial Court's order concerning installment payments to be addressed by the Trial Court when its order has become final and upon proper motion by Mother.

We next address Mother's issue on appeal concerning whether the Trial Court erred by finding that Mother was responsible for half the uncovered medical expenses unilaterally incurred by Father. As part of her argument, Mother states that agreed parenting plans should be interpreted according to contract principles. We agree that agreed parenting plans generally should be interpreted as other written agreements. *See Pierce v. Pierce*, No. W2017-02447-COA-R3-CV, 2018 WL 6070025, at *7 (Tenn. Ct. App. Nov. 19, 2018); *see also Sharp v. Stevenson*, No. W2009-00096-COA-R3-CV, 2010 WL 786006, at *6 (Tenn. Ct. App. Mar. 10, 2010) ("[O]ur holding reflects the intention of the legislature that parenting plans be interpreted as binding agreements between two parents who, although divorced, continue in their roles of parents."). However, as our Supreme Court has stated, "[w]hen the husband and wife contract with respect to the legal duty of child support, upon approval of that contract, the agreement of the parties becomes merged into the decree and loses its contractual nature." *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975). In *Penland*, the Court held that "it is clear that the reason for stripping the agreement of the parties of its contractual nature is the continuing statutory power of the Court to modify its terms when changed circumstances justify." *Id.* Upon approval of the permanent parenting plan by the Trial Court, the agreed parenting plan became a judgment of the Trial Court, and the Trial Court retained the authority to modify the terms of the child support obligation. *See Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017). In this case, Mother's statement to Father that she could not afford to pay the treatment did not modify her obligation under the permanent parenting plan that had been approved and adopted by the Trial Court without further action to modify the plan in court.

Although the Trial Court declined to hold Mother in contempt for not paying half of the Child's uncovered medical expenses, the Trial Court found that Mother was responsible under the parties' permanent parenting plan for half of the expenses. We agree. Mother argues that Father could not unilaterally incur major medical expenses on behalf of the Child and require Mother to pay for half of the expenses. In support of her argument, Mother cites to *Hilman v. Hilman*, No. M2002-00898-COA-R3-CV, 2003 WL 21766254, at *3 (Tenn. Ct. App. July 31, 2003). However, *Hilman* is distinguishable because the parent in *Hilman* had not been provided with notice of the treatment, an opportunity to provide input on the medical treatment, or the option of involving the court in the treatment decision. In the present case, Mother was provided with prior notice of the treatment at Trails Carolina and Solstice East, had conversations with treatment providers at those facilities, and had signed the consent form for the Child to attend treatment at Trails Carolina. Furthermore, Mother testified that she had no problem with the Child receiving treatment at the facilities, just her financial obligation from such facilities. According to the Trial Court, if Mother disagreed with the treatment proposed for the Child, Mother could have requested a second opinion. Mother did not request a second opinion under the plan. Mother also argues that if Father had wanted Mother to contribute to the Child's treatment, the plan provided that the parties could mediate the issue. We note, however, that either party could have requested mediation under the plan, but neither did.

- 19 -

Mother further argues that Father had failed to prove that the expenses were "reasonable and necessary medical expenses." As previously pointed out, Mother had notice that the Child was going to residential treatment and signed paperwork consenting to the treatment at Trails Carolina. As the Trial Court found, Mother may have been able to avoid these medical expenses if she had gotten a second opinion as she was allowed under the permanent parenting plan. If Mother believed the medical expenses were unreasonable and unnecessary or disagreed with the treatment plan, she could have requested a second opinion or mediation to resolve the conflict, but she did neither.

As part of this argument, Mother argues that a portion of the residential treatment programs were not considered "medical expenses." In her brief, Mother argues that "[w]hile undoubtedly the Child's experiences at the three therapeutic wilderness programs were beneficial, that does not make all of the charges from those programs 'medical expenses.'" In his expert report, Mr. Stelzman concluded that Father had paid a total of $179,295.62 in medical expenses. The Trial Court found Mr. Stelzman to be a credible witness at trial. In calculating Mother's portion of the expenses, the Trial Court deducted certain expenses upon its determination that they were not medical expenses and not subject to reimbursement. The remaining expenses were clearly determined by the Trial Court to be medical expenses.

Furthermore, Mother never raised the specific issue of whether a portion of the expenses from the three residential programs were considered non-medical in nature during the trial or in her motion to alter or amend. During trial, Mother argued only that the expenses for the educational consultant, Right Direction Crisis Intervention, Denials Management, and Mountain Management were non-medical expenses. Mother only mentioned that a portion of the expenses for the residential programs were non-medical in a brief she filed while the parties' motions to alter or amend were pending, upon request from the Trial Court concerning the issue of whether there was a duty of good faith and fair dealing. In this brief, she states that Father requested reimbursement for charges not considered therapeutic and that Father made "no effort to differentiate between educational and therapeutic treatment." Mother provided the Trial Court with no further detail concerning the alleged educational nature of portions of the program expenses.

We generally will not consider issues on appeal that have not been properly raised in the proceedings below. *See Fayne v. Vincent*, 301 S.W.3d 162, 171 (Tenn. 2009) (citing *In re M.L.P.*, 281 S.W.3d 387, 394 (Tenn. 2009)). This Court has held that an issue raised in the trial court for the first time in a post-judgment motion to alter or amend and supplement to such motion was waived on appeal when the argument advanced a new legal theory, rather than simply correcting an error of law. *See Cent. Parking Sys. of Tennessee, Inc. v. Nashville Downtown Platinum, LLC*, No. M2010-01990-COA-R3-CV, 2011 WL 1344633, at *4 (Tenn. Ct. App. Apr. 7, 2011) ("A Rule 59 motion should not be used to raise or present new, previously untried or unasserted theories or legal arguments.").

Mother's argument that a portion of these residential program expenses were not medical in nature was a new legal theory that she had not argued during trial. We find that Mother's minimally-addressed argument concerning whether a portion of the medical expenses are educational in nature was not properly raised in the proceedings below, and is, therefore, waived on appeal.

Additionally, Mother claims that Father had not done all he could to obtain "the maximum amount possible" from the insurance company in violation of good faith and fair dealing. We note, however, that Father had hired companies to work with the insurance companies in order to receive as much as possible from the insurance company. There is no evidence to support Mother's argument that Father had not attempted to obtain the maximum amount possible from his insurance provider. We find this argument to be without merit. The Trial Court found that Mother was required to pay half of the Child's uncovered medical expenses pursuant to the agreed permanent parenting plan, and we agree. We, therefore, affirm the Trial Court's judgment in this regard.

We next address whether the Trial Court erred by crediting the proceeds from the insurance policy obtained by Mother to the entire amount of medical expenses instead of only to Mother's obligation specifically. The permanent parenting plan agreed to by the parties in the divorce action, and subsequently approved by the Trial Court, stated the following: "In the event there are medical expenses not covered by medical insurance, the parents will share those costs equally." Mother argues that because she was not required to maintain health insurance for the Child, the proceeds from the policy she maintained should go to her benefit and not the overall total of medical expenses. This is not consistent with the wording of the provision at issue in the agreed permanent parenting plan which states that the parents will share equally any medical expenses not covered by medical insurance. The plan could have easily provided that Mother would receive credit for the proceeds from any insurance policy she maintained for the Child. However, the provision did not provide as such. Therefore, we affirm the Trial Court's decision applying the proceeds of Mother's insurance policy to the total amount of medical expenses prior to dividing them between the parties.

We next address whether the Trial Court erred by declining to award Father attorney's fees. Tennessee Code Annotated § 36-5-103(c) (Supp. 2020) provides as follows:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed *in the court's discretion*, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

- 21 -

(Emphasis added.)

An award of attorney's fees pursuant to the above statute is discretionary, and we will not reverse a trial court's decision concerning attorney's fees except with an abuse of that discretion. *See* Tenn. Code Ann. § 36-5-103(c) (Supp. 2020). We note that the Trial Court did not specifically deny Father's request for attorney's fees, but it did not provide in its order an award of attorney's fees to Father. We will not substitute our judgment for that of the Trial Court, and we find no abuse of discretion in the Trial Court's decision not to award attorney's fees to Father, especially considering the Trial Court declined to find that Mother's actions were contemptuous as requested by Father's petition.

Despite not including it in his statement of the issues on appeal, Father takes issue with how the Trial Court divided court costs of the proceedings below. At trial, the Trial Court assessed seventy-five percent of the court costs to Father and twenty-five percent to Mother. This Court has held that a trial court's assessment of court costs, pursuant to Tennessee Rule of Civil Procedure 54.04, is "within the sound discretion of the trial judge." *See Noland Co. v. Crye*, 726 S.W.2d 531, 532 (Tenn. Ct. App. 1986). We see no abuse of that discretion in this case, particularly in light of the Trial Court's decision not to hold Mother in contempt as Father had requested. We therefore, affirm the Trial Court's assessment of costs in the proceedings below.

Additionally, both Mother and Father have requested an award of attorney's fees incurred during this appeal. An award of attorney's fees based on Tennessee Code Annotated § 36-5-103(c) is at our discretion. *See Eberbach*, 535 S.W.3d at 477 ("[W]hen appellate attorney's fees are requested pursuant to statutes . . . which expressly permit the court to exercise its discretion, the Court of Appeals should analyze any such request by exercising its discretion to determine whether an award to the prevailing party is appropriate."). In light of all relevant considerations, including that each party was partially successful on appeal, we exercise our discretion and decline to award attorney's fees to either party on appeal.

## Conclusion

Based on the foregoing, we vacate the portion of Trial Court's judgment allowing installment payments as being premature. We modify the judgment against Mother to $38,759.11 upon our determination that the amount paid by Father to Mountain Management and Denials Management was only $1,781.76. We affirm the Trial Court's judgment in all other respects. We deny both parties' requests for attorney's fees incurred during this appeal. This cause is remanded to the Trial Court for collection of the costs assessed below. The costs on appeal are assessed one-half against the appellant, John Pollard Hoover, Jr., and his surety, if any, and one-half against the appellee, Sara Marie Poe Mossbeck.

s/ D. Michael Swiney
D. MICHAEL SWINEY, CHIEF JUDGE